**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DEWEY TAYLOR,

     Plaintiff,

v.                                  CASE NO. 3:08-cv-346-J-TEM

MICHAEL J. ASTRUE, Commissioner
of Social Security,

     Defendant.

_____

## ORDER AND OPINION

This cause is before the Court on Plaintiff's complaint (Doc. #1) seeking review of

the final decision of the Commissioner of the Social Security Administration ("the

Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and

Supplemental Security Income payments ("SSI"). Plaintiff filed a legal brief in opposition

to the Commissioner's decision (Doc. #15). Defendant filed a brief in support of the

decision to deny disability benefits (Doc. #17). The Commissioner has filed the Transcript

of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page

number).

The undersigned has reviewed and given due consideration to the record in its

entirety, including the parties' arguments presented in their briefs and the materials

provided in the transcript of the underlying proceedings. Upon review of the record, the

undersigned found the issues raised by Plaintiff were fully briefed and determined oral

argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, **the Commissioner's decision is AFFIRMED**.

## I. Procedural History

Plaintiff Dewy Taylor filed for both DIB and SSI on August 29, 2005, alleging disability as of July 24, 2003 (Tr. 11). His claim was denied initially and a hearing was held before Administrative Law Judge ("ALJ") Peter C. Edison on November 5, 2007 (Tr. 493-511). The ALJ issued an unfavorable decision on January 23, 2008 (Tr. 8-21). The Appeals Council affirmed the decision of the ALJ, making it the final decision of the Commissioner. Plaintiff now appeals, and the matter is ripe for review pursuant to the provisions of the Social Security Act, 42 U.S.C. § 405(g).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v);[1] *Crayton v. Callahan*, 120 F. 3d 1217,

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2009 edition.

1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.

3

1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations.  20 C.F.R. §§ 404.704, 416.912(c); 4041512(c).

### III. Statement of the Facts

Plaintiff was fifty-four years old on the date of the hearing (Tr. 496).  He possesses a ninth grade education and has past relevant work experience as an arc welder, construction worker II, pipe fitter, and boiler maker—all of which are classified as heavy exertion level jobs (Tr. 509).  For purposes of his Title II disability claim, Plaintiff was last insured for benefits through December 31, 2008 (Tr. 11).  In his decision, the ALJ found Plaintiff suffers from the following "severe" impairments: coronary artery disease; status post coronary artery bypass graft; obesity; diabetes mellitus; degenerative joint disease in knees, shoulder, and back; gastroesophageal reflux disorder; history of heart attacks; sleep

4

apnea; dyspnea upon exertion; hyperlipidemia; hypertension; angina pectoris; anemia; and knee problems (Tr. 13).

At the hearing, Plaintiff testified that he has pain in his shoulders and knees, which he stated has been identified as arthritis, and that he spends most of the day watching television with his feet propped up (Tr. 505-06). He stated he does limited housework, helps bring in groceries, tries to do laundry "once in a while" (Tr. 506). He also testified that his arms and shoulders go numb when he sleeps on his side (Tr. 502). In addition, he testified that he has shortness of breath, and that he can only walk approximately a half block (Tr. 504). He testified that he is unsure whether he can only walk one half of a block due to shortness of breath, pain in his knees, his back problem(s) or his heart problem(s) (Tr. 508).

In his decision, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> Lift 20 pounds occasionally; lift and carry ten pounds frequently; sit for a total of 6 hours and stand or walk for a total of 6 hours in an eight hour work day. The claimant [Plaintiff] must be given the option to sit or stand as required. Therefore, it is concluded that the claimant retains the residual functional capacity [RFC] to perform a reduced range of light work that provides a sit/stand option.

(Tr. 14).

At the hearing, the ALJ procured testimony from Vocational Expert Joanna Vanderkolk (the "VE"), who testified that Plaintiff is unable to perform the demands of his past relevant work (see Tr. 509). The ALJ posed a hypothetical question to the VE, which specified an individual with limited education, who could only perform light work with a sit/stand option (Tr. 509). The VE testified that, given those specifications, Plaintiff would

be able to perform the unskilled light jobs of: cashier; duplicating machine operator; hand packaging; outside deliverer/messenger; ticket seller and taker; and the unskilled sedentary jobs of surveillance system monitor and other hand packaging jobs (Tr. 509-10).

The ALJ accepted the testimony of the vocational expert regarding the existence of other jobs in the national and regional economy that Plaintiff can perform despite his limitations (Tr. 20-21; *see also* Tr. 509-10). Consequently, the ALJ found Plaintiff not disabled at Step 5 of the sequential evaluation process (Tr. 20-21).

## IV. Analysis

Plaintiff argues that the ALJ failed to properly assess his RFC and that, "[t]he information that was presented [to the VE] in the hypothetical that [sic] and the terms in the body of the decision are simply inconsistent" (Doc. #15 at 6, 8-10). For these reasons, Plaintiff request that the Court remand the decision to redetermine Plaintiff's RFC and to "add more specificity to the hypothetical [posed to the VE]" (Doc. #15 at 8). The Court finds Plaintiff's arguments unpersuasive for the reasons that follow.

Plaintiff contends the ALJ failed to properly assess his RFC because the ALJ did not "address what effect, if any, pain and shortness of breath would have on Plaintiff's ability to return to work" (Doc. #15 at 9). This argument is unavailing because the ALJ did address Plaintiff's pain and shortness of breath throughout his opinion and ultimately assigned Plaintiff a residual functional capacity that accounted for the limitations the ALJ found to be supported by the evidence of record.

The ALJ determined that, although Plaintiff's impairments could be expected to produce the symptoms alleged, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible (Tr. 16). The Eleventh Circuit

6

pain standard requires evidence of an underlying medical condition, and either objective medical evidence that confirms the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). After considering a claimant's subjective complaints, the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (*citing Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)); *see also Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984) (finding the credibility of a claimant's testimony is the duty of the Commissioner).

Here, the ALJ cited various reasons for discounting Plaintiff's testimony with regard to his alleged debilitating pain and shortness of breath. To illustrate, the ALJ discussed Plaintiff's breathing, back, leg, shoulder, neck, and knee impairments at length and noted that the alleged severity and limiting effects of these impairments: (1) are not supported by the medical evidence of record; (2) are belied by Plaintiff's demonstrated abilities, as found by consultative examiner, Hung V. Tran, M.D. ("Dr. Tran"); and (3) are inconsistent with Plaintiff's activities of daily living (Tr. 16-19).

With respect to the medical evidence of record, the ALJ noted that, in November 2004, Michael J. Patney, D.O. ("Dr. Patney") (Plaintiff's treating physician) only directed Plaintiff to limit stress weight to his upper right extremity due to partial dislocation of Plaintiff's sternoclavicular joint (Tr. 16; *see also* Tr. 310). In addition, Dr. Patney reported that his assessment regarding Plaintiff's knee pain was "left knee degenerative joint disease with chronic pain resolving with [cortisol] injection therapy" (Tr. 310). Plaintiff

reported to Dr. Patney that he "had [a] previous injection three weeks [prior] in the left knee, which he [sic] has not had a great deal of pain since" (Tr. 310). Dr. Patney went on to report that:

> The patient [Plaintiff] states that the only time he has pain at this time is when he is flexing his knee or putting a lot of weight [on it] and when getting up in [sic] a squat position. The patient states that the pain comes and goes at times but is not constant pain anymore.

(Tr. 310).

In February 2005, Plaintiff again presented to Dr. Patney, who reported that Plaintiff underwent an injection in November 2004, *supra*, which provided him "good relief, but more recently his pain has become exacerbated" (Tr. 306). Dr. Patney also reported that Plaintiff's gait and station were normal and that Plaintiff was fully ambulatory (Tr. 306). Dr. Patney recommended another injection for Plaintiff's knee (Tr. 306-07). In August 2006, Plaintiff presented to Dr. Patney, who stated Plaintiff reported experiencing "about two months relief status post 'steroid injections' to his knees about every three months" (Tr. 448). Dr. Patney found, upon examination, that Plaintiff's manual muscle test was 5 of 5 in his bilateral quads and hamstrings and that is range of motion was "within normal limits" (Tr. 448). Dr. Patney administered another cortisol injection and stated Plaintiff "can continue a home exercise plan" (Tr. 448). No limitations were assessed beyond directing Plaintiff to "take it easy for the next 24 to 48 hours post-injection" (Tr. 448).

The ALJ noted that, in April 2007, Dr. Patney reviewed Plaintiff's x-rays and found minimal arthrosis of Plaintiff's bilateral knees; no subchondral sclerosis; no osteophyte formation; and no cyst formation (Tr. 17; *see also* Tr. 444-45). Dr. Patney did note minimal joint space narrowing and a meniscus tear from an MRI taken in 2004 (Tr. 445). The ALJ

8

pointed out that, although Dr. Patney did state that Plaintiff may require an arthroscopy of his knee at some point, his current condition did not warrant such a procedure (Tr. 17, 444-45). The ALJ also noted that, in August 2007, Plaintiff received a cardiac clearance for an arthroscopic knee surgery at some future date; however, despite the clearance, the medical evidence does not show Plaintiff has either scheduled or undergone surgery (Tr. 17; *see also* Tr. 429-35).

Contrary to Plaintiff's assertion, Plaintiff's degenerative joint disease (arthritis) was discussed at length by the ALJ (*see* Tr. 13-16).[2] The ALJ noted that Plaintiff had degenerative joint disease in his back, knee, and shoulder and found these conditions were "severe" impairments; however, when reviewing how these impairments affect Plaintiff's functioning, the ALJ stated he gave great weight to the findings of consultative examiner, Dr. Tran. (Tr. 17-19).

In particular, upon examination by Dr. Tran on January 5, 2004, Plaintiff experienced some lumbar and shoulder pain, but had no loss of range of motion (Tr. 379-84). Plaintiff's grip strength was normal and he had no impairment of his gross and fine movements (Tr. 381). Plaintiff had no trouble getting on or off the exam room table; had no pain or loss of motion in his thoracic or cervical spine; had pain but no loss of motion in his lumbar spine; and had pain in his right shoulder, but no loss of motion (Tr. 380-81). In addition, Plaintiff's gait was normal and his squatting was normal with pain in his knees (Tr. 381). Plaintiff

---

[2]Plaintiff maintains his diagnosis of arthritis and the effects that stem therefrom, "were not discussed at all in the [ALJ's] decision" (Doc. #15 at 9). This assertion is patently incorrect as degenerative joint disease and arthritis are synonymous and the ALJ discussed this condition and the limitations that are supported by the record in great detail (*see* Tr. 15-17; *see also* MAYOCLINIC.COM, http://mayoclinic.com/health/osteoarthritis/DS00019 (last visited Sept. 29, 2009, "[o]steoarthritis, sometimes called degenerative joint disease or osteoarthrosis, is the most common form of arthritis")).

reported that he cannot walk any further than one mile (Tr. 379-81).

In December 2005, Dr. Tran noted that Plaintiff experienced a decreased range of motion in his lumbar spine; however, he appeared in no acute distress, had no trouble getting on or off the exam room table, and his straight leg raises were normal (Tr. 401-07). Plaintiff was able to lift twenty pounds with his right hand even though he had an unexplained weak grip in that hand (Tr. 403). Dr. Tran mentioned that Plaintiff "probably gave no effort to [perform] a good grip on both hands but he can lift 20 lbs with R [right] hand" (Tr. 404).

With respect to Plaintiff's alleged breathing problems, the ALJ acknowledged that medical records showed Plaintiff was diagnosed with mild restrictive process with decreased diffusing capacity (Tr. 18; *see also* Tr. 357).

As part of his burden of proving that he is disabled, however, Plaintiff must establish, through objective evidence, that his impairment(s) limit his ability to work. 20 C.F.R. §§ 404.1512(c); 416.912(c). An individual's statement concerning a condition is not alone conclusive evidence of a disability. 20 C.F.R. §§ 404.1529(a); 416.929(a). Moreover, a diagnosis is not enough to establish separate functional limitations in addition to those already established by the record and found credible by the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (finding the mere existence of an impairment neither reveals the extent to which the impairment limits one's ability to work, nor does it undermine the ALJ's determination in that regard). The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of normal body function. *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002).

10

Here, the evidence undermines Plaintiff's assertion that his breathing problems affect his ability to work. Specifically, the ALJ pointed out that Plaintiff participates in weekend karaoke sessions (Tr. 18, 177). A medical record from January 2005 provides: "[Plaintiff] has been having trouble breathing . . . for about eight weeks. He says he has had intermittent hoarseness for eight weeks. He more or less relates this to an episode of singing karaoke" (Tr. 177). Another record, dated February 2005, implies that Plaintiff routinely participates in "singing engagements" when it notes Plaintiff decreased his singing engagements after losing his voice the previous weekend (Tr. 356). In March 2005, the records show that Plaintiff reported to his speech therapist that he loses his voice after singing "in smokey places 1-2 x per week for 15-20 songs" (Tr. 354). In November 2005, the medical records confirm that Plaintiff had no chest pain and experienced "occasional" shortness of breath only after "one to two blocks of walking" (Tr. 295). Such activities and admissions clearly undermine Plaintiff's allegation that his shortness of breath affects his ability to perform a reduced range of light work. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (ALJ is not required to include limitations in an individual's RFC that he or she does not find exist).

In addition, the ALJ discussed Plaintiff's diabetes and noted that it was well controlled with medication (Tr. 16). This statement is supported by treatment notes which state Plaintiff's diabetes is "well controlled" (Tr. 417-18). The ALJ pointed out that Plaintiff admitted his blood pressure is fairly well controlled and that he does not experience daily chest pain (Tr. 499). While Plaintiff has been prescribed nitroglycerine for his heart condition, Plaintiff testified that he only takes that medication approximately twice a month (Tr. 499).

With respect to Plaintiff's activities of daily living, the ALJ referenced Plaintiff's demonstrated ability to lift twenty pounds with his right hand (Tr. 404), Plaintiff's testimony that he is able to help bring in groceries, and do some laundry (Tr. 19; *see also* Tr. 506-07). The ALJ also pointed out that Plaintiff is capable of enduring extended karaoke sessions—singing 15-20 songs in one evening—even though he alleges breathing problems prevent him, in part, from working (Tr. 19; *see also* Doc. #15 at 9).  The Eleventh Circuit has indicated that it is appropriate to consider daily activities in evaluating a claimant's allegations of disabling pain.  *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005).  Moreover, if an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints, a court may find the ALJ properly discredited the testimony.  *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).

Accordingly, as stated above, the Court finds the ALJ properly considered Plaintiff's subjective complaints and adequately explained his reasons for discrediting his testimony with regard to his alleged debilitating pain and shortness of breath.

Next, Plaintiff argues the ALJ committed reversible error because the ALJ's written decision provides more details with respect to Plaintiff's RFC than the hypothetical question posed to the VE (Doc. #15 at 7).  The details Plaintiff would have apparently liked to have seen presented in the hypothetical question, however, would have been merely a restatement of the definition of light work.  For instance, the Social Security Administration's ["SSA"] Regulations define "light work" as:

> Lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b). This definition is coterminous with the lifting requirements outlined in the ALJ's decision (*see* Tr. 14). The same definition*, supra*, is likewise provided in the *Dictionary of Occupational Titles* ("DOT"), and the VE testified that her testimony was consistent with the DOT (Tr. 511); *see also Dictionary of Occupational Titles,* United States Dep't of Labor, 1013 (4th Ed. 1991).

In addition, SSR 83-12, provides, in pertinent part, as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.) [ . . . ] In cases of unusual limitation of ability to sit or stand, a VS [Vocational Specialist or Vocational Expert] should be consulted to clarify the implications for the occupational base.

1983 WL 31253, at *4 (S.S.A. 1983).

Here, the ALJ found Plaintiff was capable of performing a significant, but not a full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) (Tr. 20). The ALJ found Plaintiff's "ability to perform all or substantially all of the requirements of this level of work [light work] has been impeded by additional limitations" (Tr. 20). Therefore, the testimony of a vocational expert was used to help determine whether there were a significant number of jobs in the national economy that Plaintiff could perform given his residual functional capacity and other vocational factors (*see* Tr. 20; *see also* Tr. 508-11).

The ALJ found Plaintiff could perform the exertional demands of light work, but that he needed the additional option to sit or stand at will (Tr. 14). According to the Eleventh Circuit, in order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (superseded by statute on other grounds as recognized in *Leonard v. Astrue*, 487 F. Supp. 2d 1333 (M.D. Fla. 2007)). As noted above, the Court does not find any inconsistency between the hypothetical question posed to the VE and Plaintiff's RFC as set forth in the body of the ALJ's decision (*see* Tr. 14; *see also* Tr. 508-11). In addition, as the Eleventh Circuit has stated, "[a]lthough the ALJ failed to specify the frequency that [the claimant] needed to change his sit/stand option, the reasonable implication of the ALJ's description was that the sit/stand option was at [the claimant's] own volition." *Williams v. Barnhart*, 140 Fed. Appx. 932, 2005 WL 1943186, at *4 (11th Cir. 2005). Therefore, contrary to Plaintiff's claim, it was not necessary for the ALJ to incorporate additional "details" about Plaintiff's need for a sit/stand option (*see* Doc. #15 at 6).[3]

Here, the ALJ consulted a vocational expert in order to determine whether a significant number of jobs exist in the national and regional economy that Plaintiff can perform despite his limitations (Tr. 508-11). The VE testified that, given Plaintiff's limitations, Plaintiff would be able to perform the requirements of occupations such as the unskilled light jobs of: cashier; duplicating machine operator; hand packaging; outside deliverer/messenger; ticket seller and taker; and the unskilled sedentary jobs of

---

[3]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

surveillance system monitor and other hand packaging jobs (Tr. 509-10).

By posing a hypothetical question to the VE that comprised all the claimant's limitations that are supported by the record, the Court finds the ALJ did not err in applying the correct legal standards, *supra*, and that his determination that other jobs exist in substantial numbers which Plaintiff can perform despite his limitations is supported by substantial evidence. *See Orestano v. Comm'r of Soc. Sec.*, 252 Fed. Appx. 962, 963-64 (11th Cir. 2007).

## V. Conclusion

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of September, 2009.

Copies to all counsel of record

THOMAS E. MORRIS
United States Magistrate Judge